O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAURIE LYNN ZEIDMAN,          ) Case No. CV 11-9368-JPR
                              )
              Plaintiff,      )
                              )
        vs.                   ) MEMORANDUM OPINION AND ORDER
                              ) AFFIRMING THE COMMISSIONER
MICHAEL J. ASTRUE,            )
Commissioner of the Social    )
Security Administration,      )
                              )
              Defendant.      )
                              )

I.    PROCEEDINGS

        Plaintiff seeks review of the Commissioner's final decision
denying her application for Social Security disability insurance
benefits ("DIB") and Supplemental Security Income benefits
("SSI").  The parties consented to the jurisdiction of the
undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed September 13, 2012, which the Court has taken
under submission without oral argument.  For the reasons stated
below, the Commissioner's decision is affirmed and this action is
dismissed.

1

## II.   BACKGROUND

Plaintiff was born on March 14, 1957. (Administrative Record ("AR") 33.)  She has a high school education. (Id.) Plaintiff worked for approximately 30 years as a credit analyst and customer service representative. (AR 34, 155.)  On January 16, 2007, Plaintiff injured her shoulder and back after she fell down a flight of stairs at work. (AR 247, 248-49.)  Plaintiff was away from work for one week and then returned to work; she continued to work continuously until November 16, 2007, when she was laid off. (AR 34, 154, 249.)  She received unemployment benefits from November 2007 until March 2008, at which point, she alleges, her pain worsened and she became unable to work. (AR 34.)

On September 29, 2008, Plaintiff filed SSI and DIB applications, alleging that she had been unable to work since November 16, 2007, because of lower back pain, right arm and right shoulder pain, and nerve damage. (AR 136-38, 139-47, 154, 183.)[1]  After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR 63-69.)  A hearing was held on January 19, 2010, at which Plaintiff,

---

[1]In his written decision, the ALJ addressed Plaintiff's DIB application only. (See AR 17.)  Plaintiff notes that she also applied for SSI, but she does not allege that the ALJ's apparent failure to consider that application is a basis for reversal. (See J. Stip. at 1.)  Thus, the Court does not address the effects of any such error.  See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (issues not raised before the district court are waived).  Moreover, because the standards for determining disability for purposes of DIB and SSI benefits are "virtually identical," the analysis herein applies equally to both.  See Penny v. Sullivan, 2 F.3d 953, 955 n.1 (9th Cir. 1995).

who was represented by counsel, appeared and testified on her own

behalf.  (AR 29-52.)  Medical Expert Dr. Richard Hutson and

Vocational Expert ("VE") Susan Green also testified.  (AR 37-51.)

In a written decision issued on February 2, 2010, the ALJ

determined that Plaintiff was not disabled.  (AR 14-28.)

Plaintiff then requested review of the ALJ's decision and

submitted additional evidence to the Appeals Council; on

September 10, 2011, the Appeals Council incorporated the

additional evidence into the record but denied Plaintiff's

request for review.  (AR 1-5.)  This action followed.

**III. STANDARD OF REVIEW**

    Pursuant to 42 U.S.C. § 405(g), a district court may review

the Commissioner's decision to deny benefits.  The ALJ's findings

and decision should be upheld if they are free from legal error

and are supported by substantial evidence based on the record as

a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91

S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481

F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such

evidence as a reasonable person might accept as adequate to

support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter

v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

a scintilla but less than a preponderance.  Lingenfelter, 504

F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880,

882 (9th Cir. 2006)).  To determine whether substantial evidence

supports a finding, the reviewing court "must review the

administrative record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's

conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1    1996).  "If the evidence can reasonably support either affirming

2    or reversing," the reviewing court "may not substitute its

3    judgment" for that of the Commissioner.  Id. at 720-21.

4    **IV.  THE EVALUATION OF DISABILITY**

5        People are "disabled" for purposes of receiving Social

6    Security benefits if they are unable to engage in any substantial

7    gainful activity owing to a physical or mental impairment that is

8    expected to result in death or which has lasted, or is expected

9    to last, for a continuous period of at least 12 months.  42

10   U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

11   (9th Cir. 1992).

12       A.   The Five-Step Evaluation Process

13       The ALJ follows a five-step sequential evaluation process in

14   assessing whether a claimant is disabled.  20 C.F.R.

15   §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,

16   828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first

17   step, the Commissioner must determine whether the claimant is

18   currently engaged in substantial gainful activity; if so, the

19   claimant is not disabled and the claim must be denied.

20   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not

21   engaged in substantial gainful activity, the second step requires

22   the Commissioner to determine whether the claimant has a "severe"

23   impairment or combination of impairments significantly limiting

24   his ability to do basic work activities; if not, a finding of not

25   disabled is made and the claim must be denied.

26   §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a

27   "severe" impairment or combination of impairments, the third step

28   requires the Commissioner to determine whether the impairment or

4

1  combination of impairments meets or equals an impairment in the
2  Listing of Impairments ("Listing") set forth at 20 C.F.R., Part
3  404, Subpart P, Appendix 1; if so, disability is conclusively
4  presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),
5  416.920(a)(4)(iii).  If the claimant's impairment or combination
6  of impairments does not meet or equal an impairment in the
7  Listing, the fourth step requires the Commissioner to determine
8  whether the claimant has sufficient residual functional capacity
9  ("RFC")[2] to perform her past work; if so, the claimant is not
10 disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv),
11 416.920(a)(4)(iv).  The claimant has the burden of proving that
12 she is unable to perform past relevant work.  Drouin, 966 F.2d at
13 1257.  If the claimant meets that burden, a prima facie case of
14 disability is established.  Id.  If that happens or if the
15 claimant has no past relevant work, the Commissioner then bears
16 the burden of establishing that the claimant is not disabled
17 because she can perform other substantial gainful work available
18 in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
19 That determination comprises the fifth and final step in the
20 sequential analysis.  §§ 404.1520, 416.920; Lester, 81 F.3d at
21 828 n.5; Drouin, 966 F.2d at 1257.

22       B.   The ALJ's Application of the Five-Step Process

23       At step one, the ALJ found that Plaintiff had not engaged in
24 any substantial gainful activity since November 16, 2007.  (AR
25 19.)  At step two, the ALJ concluded that Plaintiff had the

26 _____

27       [2]RFC is what a claimant can still do despite existing
28 exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
   see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

severe impairments of degenerative disc disease of the lumbar spine, status post right shoulder rotator cuff tear, and mild degenerative changes of the cervical spine. (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 20-21.) At step four, the ALJ found that Plaintiff retained the RFC to perform "less than the full range of light work,"[3] with the limitations that Plaintiff

> can lift and carry up to 10 pounds occasionally and frequently; stand and walk up to 6 hours in an 8 hour day; and sit up to 6 hours in an 8 hour day. The claimant must also be allowed to alternate between a standing and sitting position for up to 5 minutes every hour; so long as the claimant does not leave her workstation. She is also limited to occasional postural activities, except that she cannot climb ropes, ladders, and scaffolds. She must avoid concentrated exposure to cold, heat, wetness, humidity, and vibration; and she cannot be exposed to heights or hazards. Finally, she cannot lift above shoulder level using her right upper

---

[3]"Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve occasional walking or standing. §§ 404.1567(a)-(b), 416.967(a)-(b).

1    extremity.

2    (AR 21.)  Based on the VE's testimony, the ALJ concluded that

3    Plaintiff was able to perform her past work as a credit analyst

4    as it is generally performed.  (AR 23-24.)  In the alternative,

5    the ALJ found that Plaintiff could also perform the job of

6    receptionist.  (AR 24.)  The ALJ concluded that jobs existed in

7    significant numbers in the national economy that Plaintiff could

8    perform.  (Id.)  Accordingly, the ALJ determined that Plaintiff

9    was not disabled.  (AR 25.)

10   **V.   DISCUSSION**

11        Plaintiff alleges that the ALJ erred in (1) determining her

12   RFC; (2) failing to properly consider her testimony regarding her

13   subjective symptoms; and (3) determining that she can return to

14   her past relevant work or perform other work.  (J. Stip at 2.)

15        A.   The ALJ Did Not Err in Determining Plaintiff's RFC

16        Plaintiff contends that the ALJ erred in determining her RFC

17   because he did not take into account various medical evidence in

18   the record indicating that she had additional functional

19   impairments. (J. Stip. at 2-7, 14-16.)

20             1.   Applicable law

21        A district court must uphold an ALJ's RFC assessment when

22   the ALJ has applied the proper legal standard and substantial

23   evidence in the record as a whole supports the decision.  Bayliss

24   v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must

25   have considered all of the medical evidence in the record and

26   "explain in [his or her] decision the weight given to . . . [the]

27   opinions from treating sources, nontreating sources, and other

28   nonexamining sources."  20 C.F.R. §§ 404.1527(f)(2)(ii),

7

416.927(f)(2)(ii).   In making an RFC determination, the ALJ may

consider those limitations for which there is support in the

record, including limitations "consistent with" a medical

source's findings, and need not consider properly rejected

evidence or properly rejected subjective complaints.   See Batson

v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197-98 (9th

Cir. 2004) (finding that "substantial evidence" supported ALJ's

RFC determination that plaintiff "can walk about four blocks at a

time, stand for one hour, sit for one hour, occasionally lift

10-20 pounds, and drive for 15 minutes at a time" because

findings were "consistent with" — albeit not identical to —

examining therapist's determination that plaintiff "can lift 26

pounds occasionally, lift 13 pounds frequently, and complete an 8

hour work day given an opportunity to change positions"); 

Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination

because "the ALJ took into account those limitations for which

there was record support that did not depend on the claimant's

subjective complaints"); see also Banks v. Barnhart, 434 F. Supp.

2d 800, 805 (C.D. Cal. 2006) (when plaintiff argued that ALJ's

RFC assessment was not supported by substantial evidence because

"[i]t was only the ALJ himself, a layperson in medical matters,

who opined that [plaintiff] can tolerate all but heavy

concentration of respiratory contamination or pollution,"

district court nonetheless found that physician's overall opinion

constituted "substantial evidence" to support ALJ's RFC

determination).

     An ALJ does not need to adopt any specific medical source's

RFC opinion as his or her own.   Vertigan v. Halter, 260 F.3d

8

1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."); 20 C.F.R. §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." See Batson, 359 F.3d at 1195; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

> 2.   Relevant facts

The ALJ found that Plaintiff retained the RFC to perform "less than the full range of light work," with the limitations that Plaintiff

> can lift and carry up to 10 pounds occasionally and
> frequently; stand and walk up to 6 hours in an 8 hour
> day; and sit up to 6 hours in an 8 hour day. The
> claimant must also be allowed to alternate between a
> standing and sitting position for up to 5 minutes every
> hour; so long as the claimant does not leave her
> workstation. She is also limited to occasional
> postural activities, except that she cannot climb
> ropes, ladders, and scaffolds. She must avoid

1    concentrated exposure to cold, heat, wetness, humidity,
2    and vibration; and she cannot be exposed to heights or
3    hazards.  Finally, she cannot lift above shoulder level
4    using her right upper extremity.

5  (AR 21.)  He further stated that in making that RFC finding, he
6  "considered all symptoms and the extent to which these symptoms
7  can reasonably be accepted as consistent with the objective
8  medical evidence and other evidence" and "also considered opinion
9  evidence."  (Id.)

10      At the outset of his opinion, the ALJ acknowledged and
11  recounted the medical evidence showing that Plaintiff had the
12  severe impairments of "degenerative disc disease of the lumbar
13  spine; status post right shoulder rotator cuff tear; and mild
14  degenerative changes of the cervical spine."  (AR 19-20.)  He
15  also evaluated Plaintiff's subjective symptom testimony.  He
16  noted that Plaintiff testified that she had "severe" "chronic
17  back pain" and also reported "pain in her neck and upper
18  trapezius with pain in the right deltoid area."  (AR 21, 325.)
19  He further noted that Plaintiff testified she could not "sit for
20  more than a few minutes at a time," had "significant difficulty
21  with personal care needs," was "irritable with others" because of
22  her pain, was unable to sleep more than 3 hours at a time, and
23  "spends about 20 hours each day lying down in bed."  (AR 21, 154,
24  171-18.)  The ALJ also acknowledged that Plaintiff's mother
25  submitted a form in support of Plaintiff's claim for benefits,
26  alleging that Plaintiff was significantly limited by her pain and
27  could not perform many basic household tasks.  (AR 22, 163-70.)
28  The ALJ then wrote that "[a]fter careful consideration of the

evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 22.) He further found that Plaintiff's and her mother's allegations were not entirely credible because Plaintiff admitted she was able to engage in activities inconsistent with the level of disability she alleged – for example, he noted that Plaintiff "is able to go grocery shopping and even drive a car [(AR 166, 174)]." (AR 23.) He also noted that Plaintiff "stopped working in November 2007 because she was laid off, not because she [was] physically unable to work," which "strongly suggests" she would have continued working absent being laid off. (Id.)

The ALJ then went on to discuss the medical evidence that supported his RFC finding:

> The record reveals that the claimant's impairments are not so severe so as to preclude the claimant from working. Although the claimant was injured and assessed with degenerative changes of the spine in January 2007, she continued to work until she was laid off in November 2007 [(AR 248-49)]. Furthermore, despite the claimant's cervical pain, she has shown that she is capable of a full range of motion in her upper extremities and lower extremities. Indeed, in November 2008, consultative examiner Dr. [Harlan] Bleecker noted that the claimant's

gait was normal and the claimant was able to walk on her tiptoes and heels.   The claimant's motor and sensory examinations were also normal at this time [(AR 326-28)]. Finally, the claimant testified that her shoulder is feeling better, and that she is able to move her arm. [(AR 38-39.)]

The claimant's treatment and diagnostic studies also reveal that the claimant's condition is not as severe as she alleges.   The claimant's pain has been non-surgically treated with home exercise, chiropractic treatment, pain medications, and trigger point injections.   Indeed, the claimant has reported that her medications have helped to alleviate her pain [(AR 203-309, 378-87.)]   The claimant's April 2008 NCS and EMG studies also showed no evidence of active cervical radiculopathy in the right upper extremity; as well as no evidence of carpal tunnel syndrome or ulnar neuropathy in the right upper extremity [(AR 239)].   Furthermore, although the claimant's November 2008 NCS showed right active L5 denervation, it showed no other radiculopathy of the bilateral lower extremities [(AR 365)].   Finally, the claimant's August 2008 lumbar spine MRI showed no evidence of spinal stenosis or foraminal narrowing [(AR 362)].

(AR 22.)   The ALJ stated that he gave "great weight to the medical record in its entirety, as well as to the opinion of medical expert Dr. Hutson."   (Id.)   He noted that Dr. Hutson testified that Plaintiff "must be allowed to alternate between a standing and sitting position for up to 5 minutes every hour; so

12

long as the claimant does not leave her workstation," that she is
"limited to occasional postural activities, except that she
cannot climb ropes, ladders, or scaffolds," and that she "must
avoid concentrated exposure to cold, heat, wetness, humidity, and
vibration; cannot be exposed to heights or hazards; and cannot
lift above shoulder level using her right upper extremity."
(Id.)  The ALJ found that Dr. Hutson's assessment "also generally
aligns with the assessments of consultative examiner Dr. Bleecker
and state agency consultant M. Bayar, M.D."  (Id.)  He noted that
Dr. Bleecker found that Plaintiff "can only sit, stand, or walk
up to 30 minutes before needing to change activity" and "cannot
reach above shoulder level with the right arm," and Dr. Bayar
"opined that the claimant can engage in occasional postural
activities."  (AR 22-23.)  The ALJ then pointed out that "unlike
Dr. Hutson's assessment, Dr. Bleecker's and Dr. Bayar's
assessments also limit the claimant to lifting and carrying up to
10 pounds occasionally and frequently [(AR 328, 338-42)]"; the
ALJ gave Plaintiff "the benefit of the doubt" and thus limited
her to "lifting and carrying up to 10 pounds occasionally and
frequently" in accordance with Dr. Bleecker's and Dr. Bayar's
assessments.  (AR 23.)

    The ALJ then explained why he did not fully credit the
opinions of treating doctors Brian Padveen[4] and Glenna Tolbert.
He noted that while Dr. Padveen "opined that the claimant can
lift no more than 5 pounds [(AR 353)]" and Dr. Tolbert "opined
that the claimant can sit, stand, and walk for no more than 2

    [4]Dr. Padveen is a doctor of chiropracty, not medicine.  (AR
356.)

13

1  hours in an 8 hour day [(AR 375)]," Dr. Hutson testified that the

2  record "provides no objective evidence of such extreme

3  limitations."  (AR 23.)   The ALJ resolved the inconsistencies in

4  favor of Dr. Hutson, "a board-certified orthopedic surgeon who

5  had the advantage of the longitudinal view in this case."  (Id.)

6  Thus, the ALJ found that "[t]he combined effect of the claimant's

7  impairments is mild and does not preclude the performance of work

8  at less than the full range of light exertion."  (Id.)

9           3.  Analysis

10       The ALJ did not err in determining Plaintiff's RFC because

11  his findings were supported by substantial evidence in the

12  record.   The ALJ acknowledged that the record contained objective

13  evidence that Plaintiff had impairments in her neck, shoulder,

14  and back (AR 19-22), but he reasonably found that those

15  impairments, although "severe," were not disabling.   As the ALJ

16  noted, the EMG study performed in November 2008 showed L5 lumbar

17  spine denervation but no other radiculopathy in the lower

18  extremities (AR 22, 365), and the EMG and nerve conduction

19  studies in April 2008 also showed no evidence of active

20  radiculopathy and no evidence of carpal tunnel syndrome or ulnar

21  neuropathy (AR 22, 239).   The MRI performed in August 2008 showed

22  only "mild" to "moderate" degenerative changes and no evidence of

23  spinal stenosis, foraminal narrowing, or disc protrusion.   (AR

24  22, 362.)   Similarly, X-rays of Plaintiff's neck and back in

25  March 2008 showed some evidence of disc disease but were

26  otherwise "unremarkable"; the x-ray of Plaintiff's neck, in

27  addition, showed some abnormal curve but her vertebral heights

28  and disc spaces were "within normal limits."  (AR 22, 244-45.)

An examination of Plaintiff's neck in April 2008 showed that while she had restricted range of motion and muscle tenderness and spasm, she also had a "full range of motion in the bilateral upper extremities," her "[m]otor strength [was] grossly normal," her sensation was "grossly intact," her "[d]eep tendon reflexes [were] normal and symmetrical," and her "[t]one [was] normal." (AR 237.)  In April 2009, Plaintiff reported that her pain level was only a three on a scale of 10.  (AR 346.)

Plaintiff points to an MRI performed in January 2009 reflecting "mild" loss of disc height and disc dessication at the L3-L4 level, disc dessication at the L4-L5 level, and "mild" hypertrophic changes at the L5-S1 level as evidence that her impairments were more severe than the ALJ found (see J. Stip. at 5), but those MRI results appear consistent with the earlier MRI results showing "mild" to "moderate" degeneration.  (Compare AR 362 with AR 389.)  The ALJ did not cite to these results in his decision, but the evidence was cumulative, and thus the ALJ was not required to specifically address it.  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989); Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ need not discuss all evidence but must explain only why "significant," "probative" evidence has been rejected); Mondragon v. Astrue, 364 F. App'x 346, 349 (9th Cir. 2010) (ALJ not required to discuss doctors' specific statements "when their substance was adequately represented by the evidence the ALJ did discuss").

Several doctors' opinions in the record also supported the ALJ's findings.  As the ALJ noted, Dr. Bleecker found that Plaintiff had decreased range of motion in her neck, back, and

right shoulder and reported a positive straight-leg raising test
in the supine position; he diagnosed her with "degenerative disc
disease, degenerative arthritis lumbar spine, and rotator cuff
syndrome right shoulder." (AR 20, 326-28.) But Dr. Bleecker
also noted that Plaintiff had a normal gait; could walk on her
tiptoes and heels; had normal motor strength, sensation, and
reflexes; and had normal range of motion in the rest of her upper
and lower extremities. (AR 20, 22, 326-28.) Dr. Bleecker opined
that Plaintiff could "sit, stand, and walk six out of eight hours
left to her own discretion as to when she changes activities" but
could only do so "30 minutes at a time before she has to change
activity"; she could not reach above shoulder level with her
right arm; and she could lift "10 pounds occasionally, 10 pounds
frequently with no restrictions to the lower extremities." (AR
328.) Similarly, Dr. Bayar, after reviewing the medical evidence
in the record, found that Plaintiff could sit, stand, and walk
"about" six hours in an eight-hour workday, could lift 10 pounds
occasionally, and was limited to "occasional" postural activities
and use of the right arm above shoulder level. (AR 22-23, 339-
42.) Dr. Hutson, after reviewing the record, found that
Plaintiff could perform light work as long as she could stand up
for up to five minutes out of every hour without leaving the work
station, could not use her right arm above shoulder level, was
limited to occasional postural activities, and should avoid
heights, hazards, and certain temperature and environmental
factors. (AR 22-23, 39-43.) As the ALJ noted (AR 23), Dr.
Hutson specialized in orthopedics, and thus his opinion was
entitled to greater weight. See 20 C.F.R. §§ 404.1527(c)(5),

416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ was entitled to rely on Dr. Bleecker's, Dr. Bayar's, and Dr. Hutson's opinions in formulating his RFC assessment because they were largely consistent with each other and with other independent evidence in the record, including the above-noted EMG study, MRI, and x-ray results. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of nonexamining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record").

Plaintiff asserts that the ALJ erred in finding that she could sit up to six hours in an eight-hour day as long as she was able to "alternate between a standing and sitting position for up to 5 minutes every hour" (AR 21) because that finding, which was based on Dr. Hutson's testimony, conflicted with Dr. Bleecker's opinion that Plaintiff "could only sit, stand, or walk up to 30 minutes at a time." (J. Stip. at 6.) But the two findings, although not identical, are consistent with each other – both acknowledge that Plaintiff must be allowed to change positions for a limited time frequently throughout the day to remain comfortable. The ALJ was entitled to rely on Dr. Hutson's assessment, which was consistent with, albeit not identical to, Dr. Bleecker's. See Batson, 359 F.3d at 1197-98.

Plaintiff also argues that Dr. Hutson's opinion that she would need to be allowed to stand up to five minutes in every hour "as long as she did not leave the work station" (AR 40) is

17

1    not supported by the record because no evidence exists indicating
2    that Plaintiff should be restrained from leaving her work
3    station.  (J. Stip. at 6.)  Plaintiff has misinterpreted Dr.
4    Hutson's testimony.  Reading that statement in the context of his
5    overall testimony and the record, it is clear that Dr. Hutson
6    meant that _while_ Plaintiff was confined to her work station, she
7    needed to have the ability to stand up and change positions or
8    stretch at least five minutes of every hour.  (See AR 39-40.)
9    This construction makes sense, as the only time Plaintiff would
10   need the option to get up and change positions was when she was
11   confined to her work station – to leave the workstation,
12   Plaintiff necessarily would have already stood up.  Dr. Hutson
13   clearly did not intend to say that Plaintiff should not be
14   allowed to leave the work station.  (See id.)

15        To the extent they were inconsistent with his decision, the
16   ALJ also properly rejected the opinions of Dr. Padveen and Dr.
17   Tolbert.  First, Dr. Padveen is a chiropractor and thus not an
18   "acceptable medical source"; the ALJ was not required to give
19   significant weight to Dr. Padveen's opinions.  See 20 C.F.R.
20   §§ 404.1513(a) & (d), 416.913(a) & (d); Gomez v. Chater, 74 F.3d
21   967, 970-71 (9th Cir. 1996) (opinions from "other sources" given
22   less weight than "acceptable medical sources"); Kottke v. Astrue,
23   No. CV 07-05618-VBK, 2008 U.S. Dist. LEXIS 73329, at *13 (C.D.
24   Cal. Aug. 1, 2008) (holding that "[t]he ALJ was not bound to
25   accept a residual functional capacity assessment rendered by a
26   chiropractor based on his own diagnosis" because "[t]o do so
27   would blur the line between the type of evidence which may be
28   considered from acceptable medical sources, as against evidence

18

from other sources"). Second, the ALJ properly rejected Dr.
Padveen's opinion that Plaintiff could not lift more than five
pounds because it was inconsistent with the other medical
evidence of record, including the opinions of Dr. Bleecker, Dr.
Hutson, and Dr. Bayer that Plaintiff could lift 10 pounds at
least occasionally.

The ALJ's RFC finding was otherwise consistent with Dr.
Padveen's opinion that Plaintiff should be precluded from
"repetitive bending, stooping, twisting, and turning" and
repetitive use of the right arm above the shoulder level.
(Compare AR 21 with AR 353.) Moreover, Dr. Padveen did not find
Plaintiff to be completely unable to work. He noted several work
restrictions but did not opine that Plaintiff was permanently and
totally disabled (see AR 353); he also reported that her shoulder
and back pain was only "intermittent" and "mild to moderate" and
noted that she reported only "occasional, mild pain" "with
respect to recreational activities" (AR 352-53).

The ALJ also properly rejected Dr. Tolbert's functional
capacity findings. Dr. Tolbert filled out a check-box form in
December 2009 stating that Plaintiff could not lift any weight;
could not sit, stand, or walk for more than two hours in an
eight-hour workday; and would have to miss more than four days of
work per month as a result of her impairments or treatments. (AR
374-77.) An ALJ is entitled to reject medical opinions that are
"in the form of a checklist," lack "supportive objective
evidence," and are contradicted by other evidence in the record.
Batson, 359 F.3d at 1195; see also Crane v. Shalala, 76 F.3d 251,
253 (9th Cir. 1996) (ALJ "permissibly rejected [psychological

19

evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions"). Dr. Tolbert's findings were inconsistent with the other evidence in the record and were unsupported by adequate explanation. Indeed, where Dr. Tolbert was asked to provide evidentiary support for her opinion, she noted, "I don't have sufficient information." (AR 377.) Dr. Tolbert's treatment notes from 2009 to 2010 also do not support her RFC assessment. Instead, they note only Plaintiff's various subjective complaints of poor sleep and difficulty walking; findings of reduced range of motion, which the ALJ considered and incorporated into the RFC; and trigger point injections into Plaintiff's back to alleviate pain, which, the ALJ noted, based on Dr. Tolbert's notes, helped control Plaintiff's symptoms. (See AR 22, 377 (noting sacroiliac joint and lumbar facet conditions are "improved" and injections are "effective"); 378-87.)

     Plaintiff argues that if the ALJ felt that Dr. Tolbert's or Dr. Padveen's opinions were not supported by "medically acceptable clinical and laboratory diagnostic techniques, he had the duty to recontact" them. (J. Stip. at 4-5.) "The claimant bears the burden of proving that she is disabled." Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." Bayliss, 427 F.3d at 1217; see also 20 C.F.R. §§ 404.1512(e), 416.912(e). The ALJ found the evidence adequate to make a determination regarding Plaintiff's disability, and, as noted above, his opinion was supported by substantial evidence in the

1   record.   Thus, he did not have a duty to contact the doctors.

2   See Bayliss, 427 F.3d at 1217.

3        The new evidence submitted to the Appeals Council does not

4   compel a different conclusion.   Although the new evidence

5   bolstered the ALJ's finding that Plaintiff had medically

6   determinable physical impairments that were likely to cause her

7   some pain, the existence of some pain does not constitute a

8   disability if it does not prevent a plaintiff from working.   See

9   Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (SSI program

10  "intended to provide benefits to people who are unable to work;

11  awarding benefits in cases of nondisabling pain would expand the

12  class of recipients far beyond that contemplated by the

13  statute."); Thorn v. Schweiker, 694 F.2d 170, 171 (8th Cir. 1982)

14  ("A showing that [claimant] had a back ailment alone would not

15  support a finding that she was disabled unless the limitations

16  imposed by the back ailment prevented her from engaging in

17  substantial gainful activity.").   The ALJ acknowledged that

18  Plaintiff had "severe" neck, back, and shoulder impairments.   The

19  new evidence does not establish that Plaintiff was more

20  restricted in her capacity to work than the ALJ found, and thus

21  it does not detract from the ALJ's conclusion that Plaintiff

22  retained the RFC to perform less than a full range of light work.

23  Moreover, because the new evidence postdated the hearing date, it

24  must be afforded limited weight.   See 20 C.F.R. §§ 404.970,

25  416.1470(b) ("If new and material evidence is submitted, the

26  Appeals Council shall consider the additional evidence only where

27  it relates to the period on or before the hearing date of the

28  administrative law judge hearing decision."); but see Smith v.

21

1  *Bowen*, 829 F.2d 1222, 1225 (9th Cir. 1988) ("[R]eports containing

2  observations made after the period for disability are relevant to

3  assess the claimant's disability.").

4       In sum, although Plaintiff points to various findings in the

5  record that could support a finding of disability if interpreted

6  differently than in the ALJ's opinion, this Court may not

7  "second-guess" the ALJ's findings simply because the evidence may

8  have been susceptible of other interpretations more favorable to

9  Plaintiff.  *See* *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

10 Cir. 2008).  Reversal is therefore not warranted on this basis.

11      B.   The ALJ Did Not Improperly Discount Plaintiff's

12           Subjective Symptom Testimony

13      Plaintiff next argues that the ALJ "failed to properly

14 evaluate Plaintiff's complaints of pain and did not properly

15 apply the pain standard." (J. Stip. at 16-19, 22-23.)  According

16 to Plaintiff, the ALJ should not have discounted her testimony

17 that she was incapable of performing all but the most basic of

18 activities and was essentially bedridden, and he should not have

19 discounted her mother's allegations to the same effect.  (*Id.*)

20 Reversal is not warranted on this basis, however, because the ALJ

21 made specific findings as to Plaintiff's and her mother's

22 credibility that were consistent with the medical evidence of

23 record.

24           1.   Applicable law

25      An ALJ's assessment of pain severity and claimant

26 credibility is entitled to "great weight."  *See* *Weetman v.*

27 *Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Nyman v. Heckler*, 779

28 F.2d 528, 531 (9th Cir. 1986).  When the ALJ finds a claimant's

subjective complaints not credible, the ALJ must make specific findings that support the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative evidence of malingering, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony.  Lester, 81 F.3d at 834.  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citation omitted).  If the ALJ's credibility finding was supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing."  Thomas, 278 F.3d at 959.

## 2.  Relevant facts

In November 2008, Plaintiff filled out a function report in which she stated that her pain prevented her from doing most daily activities and that she spent approximately 20 out of 24 hours each day in bed.  (AR 171-78.)  Plaintiff noted that she was able to feed her dog and let him in and out of the back yard, that she was able to drive a car and walk, and that she could leave the house on her own to go shopping and to doctor's appointments, though her outings "never exceed[ed] 45 minutes."  (AR 171, 174)  She also stated that she was able to prepare simple meals and do some laundry.  (AR 173.)  She stated that she was no longer able to do most housework or leave the house to socialize with friends, and that there were days she was in so much pain she could not brush her teeth, shower, or get dressed.  (AR 172-75.)  On the same day, Plaintiff's mother also filled out

23

a function report alleging that Plaintiff spent most of her day lying on the couch or lying down in bed "to alleviate her chronic pain"; Plaintiff's mother's descriptions of Plaintiff's daily activities generally echoed Plaintiff's own. (See AR 163-70.)

Plaintiff testified at the hearing that she had "chronic lower back pain" and "can't sit for more than five minutes without having to get up or lie down, actually." (AR 34.) She admitted that she did not use any assistive devices such as a cane or back brace to move around. (Id.) She also admitted that she had not been offered surgery for her back but took medication, attended physical therapy, and used an electric stimulus machine at home to treat her pain symptoms. (AR 35.) She testified that her rotator cuff injury was "pretty much" resolved with physical therapy, and she was able to use her arm again. (AR 39.) She alleged that she did not feel she was able to work and spent "probably 20 hours a day lying down" because of her back pain. (AR 36.)

3.  <u>Analysis</u>

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment." (AR 22.) He also found that Plaintiff's mother's allegations were not credible for the same reasons. (AR 23.) Reversal is not warranted based on the ALJ's alleged failure to make proper credibility findings or properly consider Plaintiff's subjective symptoms.

Plaintiff contends that the ALJ could reject her subjective symptom testimony only "on the basis of specific findings

24

1  providing adequate justification." (J. Stip. at 18 (citing

2  Cotton v. Bowen, 799, F.2d 1403, 1407 (9th Cir. 1986))). Here,

3  the ALJ made specific, convincing findings in support of his

4  adverse credibility determination.  He noted that clinical

5  findings from several doctors revealed only mild to moderate

6  functional impairments and showed that Plaintiff was capable of a

7  full range of motion in her upper and lower extremities;

8  Plaintiff testified that her shoulder was feeling better and she

9  was able to move her arm; several test results, including an MRI,

10  revealed only minimal abnormalities in Plaintiff's neck and back;

11  several doctors found Plaintiff capable of performing what

12  amounted to light work; and Plaintiff's symptoms appeared to

13  improve with medication and conservative treatment.  (AR 22.)

14  Indeed, as Plaintiff admitted, no doctor had ever recommended

15  surgery for her.  (AR 35 (Plaintiff's testimony that she had not

16  been "offered surgery for [her] back"); see also, e.g., AR 213

17  (noting "surgery not authorized" for Plaintiff's shoulder); AR

18  225 (stating that "treatment plan" was "no treatment at this

19  time").)  Plaintiff argues that the medical evidence shows that

20  she had conditions that could cause lumbar and cervical spine

21  pain (see AR 18); but the ALJ did not hold that Plaintiff had no

22  impairments.  Instead, as the ALJ correctly noted, Plaintiff's

23  medically determinable impairments could be expected to cause the

24  alleged symptoms, but Plaintiff's testimony concerning the

25  "intensity, persistence and limiting effects" of those symptoms

26  was not credible for the reasons identified by the ALJ.  (AR 22.)

27  The ALJ's reasons for rejecting Plaintiff's and her mother's

28  testimony in total constituted appropriate bases for discounting

1   Plaintiff's subjective symptom testimony.  See, e.g., Williamson
2   v. Comm'r of Soc. Sec., 438 F. App'x 609, 610 (9th Cir. 2011)
3   (proper for ALJ to discount plaintiff's testimony when there was
4   evidence plaintiff "exaggerated her symptoms"); Tonapetyan, 242
5   F.3d at 1148 (credibility determination based on, among other
6   things, plaintiff's "tendency to exaggerate" proper when
7   supported by "substantial evidence"); Tommasetti, 533 F.3d at
8   1039 (ALJ may infer that claimant's "response to conservative
9   treatment undermines [claimant's] reports regarding the disabling
10  nature of his pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th
11  Cir. 1995) (holding that "contradictions between claimant's
12  testimony and the relevant medical evidence" provided clear and
13  convincing reasons for ALJ to reject plaintiff's subjective
14  symptom testimony); Flaten v. Sec'y of Health & Human Servs., 44
15  F.3d 1453, 1464 (9th Cir. 1995) (ALJ may properly rely on minimal
16  medical treatment); Stubbs-Danielson v. Astrue, 539 F.3d 1169,
17  1175 (9th Cir. 2008) (doctors' opinions finding plaintiff "could
18  perform a limited range of work [] support the ALJ's credibility
19  determination").

20      Plaintiff also argues that the ALJ erred in considering
21  Plaintiff's ability to engage in daily activities as evidence of
22  her lack of credibility.  (J. Stip. at 16-17 (citing Vertigan,
23  260 F.3d at 1050).)  Although it is true that "one does not need
24  to be 'utterly incapacitated' in order to be disabled," Vertigan,
25  260 F.3d at 1050, the extent of Plaintiff's activity here
26  supports the ALJ's finding that Plaintiff's reports of her
27  impairment were not fully credible. See Bray v. Comm'r of Soc.
28  Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v.

_Sullivan_, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing _Fair_, 885 F.2d at 604).  The ALJ properly noted that Plaintiff's ability to do daily activities such as driving and grocery shopping was at odds with her testimony that she had to lie down for approximately 20 hours per day because of pain and was essentially bedridden.  (AR 23.)

Plaintiff further contends that the ALJ erred in finding she was not fully credible because she admitted she stopped working on November 16, 2007, not because she was no longer able to work due to her alleged impairments but because she was laid off.  The ALJ did not err in considering this fact.  _See_ _Bruton v. Massanari_, 268 F.3d 824, 826 (9th Cir. 2001) (holding that ALJ properly considered fact that claimant stopped working because he was laid off, not because of medical disability).  To apply for unemployment benefits, Plaintiff had to hold herself out as able to work; her assertion that she became disabled on November 16, 2007, when she continued to receive unemployment benefits for several months thereafter was not credible.  _See_ _Carmickle v. Comm'r, Soc. Sec. Admin._, 533 F.3d 1155, 1161–62 (9th Cir. 2009) (noting that applying for unemployment benefits is inconsistent with disability because one has to hold oneself out as "available, willing and able to work").  Moreover, while Plaintiff's symptoms could have worsened since she was laid off, the medical evidence still did not support a finding that she had

1  become disabled, for the reasons discussed above.

2      This Court may not "second-guess" the ALJ's credibility

3  finding simply because the evidence may have been susceptible of

4  other interpretations more favorable to Plaintiff.  <u>See</u>

5  <u>Tommasetti</u>, 533 F.3d at 1039.  The ALJ reasonably and properly

6  discredited Plaintiff's and her mother's testimony regarding the

7  severity of Plaintiff's symptoms and gave clear and convincing

8  reasons for his adverse credibility finding.  Reversal is

9  therefore not warranted on this basis.

10     C.   <u>The ALJ Properly Concluded That Plaintiff Could Perform</u>

11          <u>Her Past Relevant Work and Other Work</u>

12     Plaintiff asserts that the ALJ improperly concluded that

13  Plaintiff could perform her past relevant work as a credit

14  analyst and could also perform other work.  (J. Stip. at 23-25.)

15          1.   <u>Applicable law</u>

16     Plaintiff has the burden or proving that her alleged

17  physical or mental impairments prevented her from engaging in her

18  previous occupation.  <u>See</u> <u>Vertigan</u>, 260 F.3d at 1051.  "To

19  determine whether a claimant has the residual capacity to perform

20  his past relevant work, the [ALJ] must ascertain the demands of

21  the claimant's former work and then compare the demands with his

22  present capacity."  <u>Villa v. Heckler</u>, 797 F.2d 794, 797-98 (9th

23  Cir. 1986).  Plaintiff has the burden of proving she was unable

24  to return to her former type of work and not just to her former

25  job.  <u>Orteza v. Shalala</u>, 50 F.3d 748, 751 (9th Cir. 1995); <u>see</u> 20

26  C.F.R. §§ 404.1520(f), 416.920(f); <u>Valencia v. Heckler</u>, 751 F.2d

27  1082, 1086-87 (9th Cir. 1985) (classifying work according to

28  isolated tasks not allowed).  "Former type" of work means the

1   general kind of work that Plaintiff used to perform.   See Villa,

2   797 F.2d at 798.

3          2.   Analysis

4          As discussed above, the ALJ's RFC finding was supported by

5   substantial evidence and was therefore proper; thus, to the

6   extent Plaintiff argues that the ALJ's determination that she

7   could perform her past relevant work or other work was erroneous

8   because it was based on an improper RFC finding, that argument

9   fails for the reasons outlined above.   The ALJ properly posed a

10  hypothetical to the VE containing all of the limitations he found

11  credible based on the evidence of record; in response, the VE

12  testified that Plaintiff could perform her past relevant work as

13  a credit analyst as generally performed.   (AR 44); see Bayliss,

14  427 F.3d at 1218 (holding that because "[t]he hypothetical that

15  the ALJ posed to the VE contained all of the limitations that the

16  ALJ found credible and supported by substantial evidence in the

17  record," ALJ's "reliance on testimony the VE gave in response to

18  the hypothetical therefore was proper").

19         Plaintiff argues that the ALJ's finding was in error because

20  she cannot perform her past relevant work as actually performed.

21  (J. Stip. at 23-24.)   The VE interpreted Plaintiff's past

22  relevant work as actually performed as a combination of the jobs

23  of credit analyst (DOT 160.267-022, 1991 WL 647265), a sedentary

24  job, and customer service representative (DOT 205.362-026, 1991

25  WL 671712), a "light" exertional-level job.   (AR 43.)   It is

26  undisputed that the ALJ found Plaintiff capable of performing

27  less than a full range of light work; thus, she would not

28  necessarily be capable of performing a job such as the customer

29

service representative job that required light exertion. But the ALJ did not find that Plaintiff could perform her past relevant work as actually performed; he instead found that she could perform the credit analyst job as it is "generally performed," which requires only sedentary exertion. (AR 24.) That finding was proper. See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (VE may offer testimony in response to hypothetical question about whether person with claimant's impairments can meet demands of claimant's previous work "either as the claimant actually performed it or as generally performed in the national economy" (emphasis added)). The VE's testimony that a hypothetical individual with Plaintiff's limitations could perform the work of credit analyst as generally performed was consistent with the DOT description of the credit analyst position and was therefore supported by substantial evidence. (AR 44); see DOT 160.267-022, 1991 WL 647265; Bray, 554 F.3d at 1230 n.3. The ALJ therefore did not err in relying on the VE's testimony.

Moreover, even if the ALJ did err in finding that Plaintiff was capable of performing the credit analyst job as generally performed, the error was harmless because the ALJ made the alternative finding at step five that Plaintiff could perform the sedentary job of receptionist. (AR 24-25); see Carmickle, 533 F.3d at 1162 (harmless-error rule applies to review of administrative decisions regarding disability); see also Gallo v. Comm'r of Soc. Sec. Admin., 449 F. App'x 648, 650 (9th Cir. 2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about the Addresser job, any error that the ALJ may have committed by relying on the testimony about the

'credit checker' job was harmless" (citing <u>Carmickle</u>, 533 F.3d at 1162)).  Plaintiff argues that she could not perform the receptionist job because her RFC was more restricted than the ALJ found (J. Stip. at 24), but for the reasons stated above that argument fails.  Reversal is therefore not warranted on this basis.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: <u>October 15, 2012</u>

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[5]This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

31